Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/24/2026 08:09 AM CDT

Larry J. Stava, appellant, v.
Carine F. Stava, appellee.
___ N.W.3d ___

Filed July 24, 2026.    No. S-25-469.

1. **Judgments: Appeal and Error.** The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.

2. **Divorce: Child Custody: Child Support: Property Division: Alimony: Attorney Fees: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.

3. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.

4. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

5. **Divorce: Property Division.** The source of funds rule is a tool for identifying the marital and nonmarital portions of an asset that has both characteristics.

6. **____: ____.** To apply the source of funds rule in any given case, at least three variables must be known: (1) the value of an asset, (2) the marital contributions to that asset, and (3) the separate contributions to that asset.

7. **Divorce: Property Division: Evidence: Proof.** When a dissolution action presents an asset with dual character, with both marital and nonmarital interests, and the evidence proves those variables, it is proper to apply the source of funds rule.

8. **Divorce: Property Division.** The source of funds rule calculates the percentage of the total contributions made by the marriage in the acquisition of an asset to determine the proportional marital interest in the appreciation of the asset.

9. ____: ____. The use of marital funds to acquire assets creates a marital ownership interest in the asset to the extent those marital funds reduce the principal balance of a loan.

10. ____: ____. The ultimate goal of the source of funds rule is to classify dual-character assets and determine the percentage of an asset acquired by the marriage—the marriage's ownership percentage—in order to calculate the marital interest in the appreciated value of the asset.

11. ____: ____. Payments on secured debt are contributions to the asset to which the original borrowed funds flowed. They are not contributions to an asset which secures the debt, but which was not otherwise acquired with the debt proceeds.

12. **Divorce: Property Division: Equity.** Premarital equity must be included as a separate contribution because the goal of the source of funds rule is to classify the passive appreciation of the asset that occurs during the marriage.

Appeal from the District Court for Washington County: Zachary L. Blackman, Judge. Affirmed as modified.

Donald A. Roberts, of Roberts Law, L.L.C., for appellant.

David Pontier, of Koenig | Dunne, P.C., L.L.O., for appellee.

Funke, C.J., Cassel, Stacy, Papik, Freudenberg, Bergevin, and Vaughn, JJ.

Bergevin, J.

## I. INTRODUCTION

This marital dissolution action is before us on appeal for the second time. In the prior appeal, *Stava v. Stava* (*Stava I*),[1] we expressly adopted the source of funds rule for classifying the marital portion of passively appreciated assets with a dual character and remanded the cause to the district court. The issues raised in this appeal are the scope of our mandate on remand and the applicability and implementation of the

---

[1] See *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

source of funds rule to the facts of this case. In addressing these issues, we revisit the source of funds rule for the benefit of both the bench and the bar. We resolve this appeal by modifying the district court's equalization of the marital estate but otherwise affirming its decree of dissolution.

## II. BACKGROUND

We limit our recitation of the facts to those pertinent to the resolution of this appeal.

### 1. *Stava I*

#### (a) District Court

In its initial decree, the district court awarded each party—Larry J. Stava and Carine F. Stava—one-half of the marital estate.

At issue in *Stava I* was the classification of two lots—"Lot 14" and "Lot 15"—and their passive appreciation as marital or Larry's separate property. Prior to the parties' marriage, Larry purchased Lot 14 (32 acres of real property) and Lot 15 (approximately 34 acres of real property), neither of which had any improvements. At different points in time, both of which were before the parties' marriage, loans were obtained to build improvements on each lot.

For Lot 14, Larry obtained a bank loan to finance the construction of a house and a shed on the property for himself and his children from his first marriage. Lot 14 served as collateral for the loan. A house and a shed were built on Lot 14 before the parties' marriage. The house became the parties' marital residence after they married. Larry made regular payments on the loan before the parties' marriage, and marital funds were used to make the loan payments after their marriage. Eventually, Larry used proceeds from other premarital property to pay off the loan.

For Lot 15, Larry and Carine jointly decided to build a barn as part of "The Farm at Butterflat Creek, L.L.C.," which they jointly owned in equal shares. They jointly took out a

loan and used the proceeds to build the barn. Lot 14 and Lot 15 served as collateral for the loan. Construction of the barn was completed before the parties' marriage. After the parties' marriage, marital funds were used to make regular payments on the loan. Eventually, Larry paid off the loan balance with separate inheritance funds.

The district court found that both properties—the land and the improvements—were Larry's separate property and included the marital contributions made toward the loans in the marital estate. The court further found that the increase in value of the properties during the marriage was passive appreciation and, thus, was entirely Larry's separate property. Carine appealed.

(b) Appeal

On direct appeal,[2] the Nebraska Court of Appeals recognized a distinction between the land, which Larry owned outright before the parties' marriage, and the improvements for which loans were taken out and paid for with marital funds. As to the land portions of Lot 14 and Lot 15, the Court of Appeals found no error in the district court's classification of the land as Larry's separate property.

The Court of Appeals also found no error in the district court's treatment of the marital residence—crediting the payments made to the marital estate. However, it found error related to the barn improvement made on Lot 15. The Court of Appeals concluded, under the active appreciation rule, that the barn was a marital asset, specifically noting that the loan for the barn was obtained jointly shortly before the parties' marriage. It found that "[t]he barn's conception, construction, and financing [were] a joint effort, with the first payment on the barn loan commencing the month the parties were married."[3]

---

[2] See *Stava v. Stava*, 32 Neb. App. 840, 6 N.W.3d 567 (2024), *affirmed in part and in part reversed and remanded, Stava I, supra* note 1.

[3] *Id.* at 857, 6 N.W.3d at 580.

The Court of Appeals modified the district court's equalization payment to account for the increase in the marital estate due to its classification of the barn as marital property, less credit to Larry for a nonmarital contribution.

Carine petitioned for further review regarding Lot 14 and the land of Lot 15. Larry did not cross-petition regarding the barn.

### (c) Further Review

On further review, this court affirmed in part and in part reversed the Court of Appeals' decision and remanded the cause with directions.[4] In so doing, we expressly adopted the source of funds rule, which provides that payments to acquire property with marital funds create a marital interest in such property. Under this rule, the value of the acquired property is classified proportionately as marital and nonmarital property. As we observed in *Stava I*, the source of funds rule is applicable to the passive appreciation of assets.

Particularly relevant here, Larry did not petition for further review and did not assign as error the Court of Appeals' conclusion that the barn was marital property, nor the related modification of the district court's equalization judgment. Accordingly, we affirmed the Court of Appeals' decision with respect to its conclusion that the barn on Lot 15 was marital property.

However, we reversed the Court of Appeals' decision as to the land portion of Lot 15 and the entirety of Lot 14—both the land and improvements—concluding that both the district court and the Court of Appeals "utilized an active appreciation analysis and did not consider the source of funds rule."[5] As framed,

the real question [was] whether some portion of the lots became marital via principal paydown with marital funds. To the extent the properties were acquired with marital

---

[4] See *Stava I, supra* note 1.
[5] *Id*. at 49, 13 N.W.3d at 197.

funds through the acquisition of equity therein, the active appreciation rule is not applicable and passive appreciation of that portion of the properties belongs to the marital estate.[6]

The cause was remanded to the district court "for a new hearing on the equitable division of Lot 14 and the land portion of Lot 15, after determining whether implementation of the source of funds rule is necessary to equitably separate the marital property in this matter."[7]

The mandate directed the district court to "without delay, proceed to enter judgment in conformity with the judgment and opinion of the Nebraska Supreme Court."

## 2. Remand

On remand, the case came before a different district court judge. A hearing was held on the mandate. Carine argued that the source of funds rule should apply in light of this court's opinion in *Stava I* and that the record was sufficient to apply the source of funds rule.

Larry argued that an evidentiary hearing was necessary for the district court to determine whether the source of funds rule should apply in this case. Larry's primary argument in support was that the applicability of the source of funds rule changed the court's equitable division considerations, such that an equal division of the marital estate may no longer be equitable. Larry further argued that the source of funds rule should not be applied in this case.

At that hearing, Carine introduced an aid to the court, which purported to apply the source of funds rule to Lot 14 and Lot 15 and divided the marital estate equally. Relevant to this appeal, Carine's aid did not separate the land of Lot 15 from the barn. Instead, it treated the value of the barn as a marital contribution toward the acquisition of Lot 15. The aid also did

---

[6] *Id.*

[7] *Id.* at 50, 13 N.W.3d at 197-98.

not separate the land of Lot 14 from the house and the shed. The district court left the record open for Larry to file a similar aid to the court. Upon its filing, the court would take the matter under advisement and issue a written decision.

Subsequently, Larry filed a "[r]esponse to [r]emand" and a motion for an evidentiary hearing. Larry did not provide a similar aid to the court regarding the application of the source of funds rule. In Larry's response, he argued that the district court should first determine whether the implementation of the source of funds rule was necessary to equitably separate the marital property. If so, he argued that the court should then conduct an evidentiary hearing. He contended that this procedure was in accordance with this court's mandate. As he argued, "[t]he Supreme Court had numbers it could have plugged into its' [sic] source of funds rule calculation . . . [h]owever, it chose not to . . . ."

Specifically, Larry contended that an evidentiary hearing was necessary to introduce evidence concerning (1) the parties' agreements during the marriage, (2) use of specific bank accounts for specific purposes, (3) use of marital income for nonmarital purposes, (4) specific detail of the parties' bank accounts and incomes, (5) living expenses and debts, (6) commingling, (7) whether Carine should be "awarded one-third or one-half" of the marital estate, and (8) whether the banks considered the land of Lot 14 as part of its collateral, "just to name a few issues." He argued that those issues were not relevant under the case law in place at the time of trial but were made relevant by the express adoption of the source of funds rule.

A hearing was later held on Larry's motion for an evidentiary hearing. Larry, in essence, repeated his arguments set forth above, emphasizing that the case was tried under the active appreciation rule set forth in *Parde v. Parde*,[8] not the source of funds rule. In response, Carine argued that

---

[8] *Parde v. Parde*, 313 Neb. 779, 986 N.W.2d 504 (2023).

Larry cannot change his positions from the first trial and that the record was sufficient to apply the source of funds rule because all the necessary variables were known. The district court took the matter under advisement.

The district court later entered an order on remand. The court first found that the source of funds rule was appropriate to apply in this case: "Implementation of the source of funds rule in this case will ensure an equitable distribution of the marital property." The court went on to adopt Carine's calculations in her aid to the court, once again dividing the marital estate equally between the parties. The court overruled Larry's motion for an evidentiary hearing.

Larry filed a timely appeal, and we moved this appeal to our docket on our own motion.[9]

## III. ASSIGNMENTS OF ERROR

Larry assigns that the district court erred and abused its discretion (1) by failing to allow an evidentiary hearing on remand, (2) by finding that the record was complete and "the court had everything necessary to modify the Decree despite the fact that the Judge on remand was not the original trial Judge," (3) in finding that the source of funds rule was appropriate to apply to Lot 14 and the acreage of Lot 15, and (4) by inaccurately and improperly making its calculation of the marital interest in Lot 14 and the acreage portion of Lot 15.

## IV. STANDARD OF REVIEW

[1] The construction of a mandate issued by an appellate court presents a question of law on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below.[10]

[2] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has

---

[9] See, Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024); Neb. Ct. R. App. P. § 2-102(C) (rev. 2022).

[10] *In re Estate of Walker*, 320 Neb. 139, 26 N.W.3d 316 (2025).

been an abuse of discretion by the trial judge in his or her determinations regarding custody, child support, division of property, alimony, and attorney fees.[11]

[3] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.[12]

[4] When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[13]

## V. ANALYSIS

Even though Larry assigns four errors, for our purposes in resolving this appeal, they can be addressed in two parts. First is Larry's contention that the district court erred in its denial of his request for an evidentiary hearing. Second is the court's implementation of the source of funds rule. We address these issues in turn.

### 1. EVIDENTIARY HEARING

This court ordered the cause be remanded "for a new hearing on the equitable division of Lot 14 and the land portion of Lot 15, after determining whether implementation of the source of funds rule is necessary to equitably separate the marital property."[14] Larry argues that the district court erred in not holding an evidentiary hearing regarding the application of the source of funds rule. He argues the court erred for two primary reasons: our mandate required an evidentiary hearing on the implementation of the source of funds rule and the court failed to consider whether an equal distribution of the marital estate was still equitable in light of the new

---

[11] *Stava I, supra* note 1.

[12] *Id*.

[13] *Id*.

[14] *Id*. at 50, 13 N.W.3d at 197-98.

evidence that he would have adduced. He also argues that the court erred in finding that the record was complete to resolve the case on remand. We disagree.

We begin by dispelling Larry's contention that our mandate required the district court to hold an evidentiary hearing. Our legal principles governing remand are well established. In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order.[15] When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate.[16] When the judgment of a trial court is reversed on appeal and the cause remanded without specific instructions, it is the duty of the trial court to exercise its discretion in the further disposition of the case.[17]

In *Stava I*, we noted that "the district court did not consider whether the marital estate's acquisition of equity in the properties acquired a proportionate marital interest that includes passive appreciation—and it did not determine the equitable division of said marital interest."[18] Accordingly, we remanded the cause "for a new hearing on the question of the equitable division" of the marital interest in the lots.[19] Our instructions on remand did not require a new *evidentiary* hearing. Instead, we directed a hearing for the court to consider the source of funds rule as applied to the passive appreciation of the lots. The court did not have the opportunity to do so because the

[15] *In re Estate of Walker, supra* note 10.

[16] *Id.* See *Jurgensen v. Ainscow*, 160 Neb. 208, 69 N.W.2d 856 (1955).

[17] *In re Estate of Walker, supra* note 10. See, *Jurgensen, supra* note 16; *Sowerwine v. Central Irrigation District*, 91 Neb. 457, 136 N.W. 44 (1912).

[18] *Stava I, supra* note 1, 318 Neb. at 49, 13 N.W.3d at 197.

[19] *Id*.

source of funds rule was not expressly announced until *Stava I*. Whether an evidentiary hearing was necessary was within the court's discretion.

Larry further contends that our decision in *Stava I* "changed how pre-marital property and passive appreciation will be treated in domestic cases."[20] He argues that the trial in this case occurred before "new law [was] introduced at the appellate level" and that "[t]o disallow an evidentiary hearing . . . is clearly an abuse of discretion."[21] However, as we noted in *Stava I*, even though "we have not used the term 'source of funds' rule, the principles of the majority rule align with our case law."[22] At oral argument, Larry conceded that although *Stava I* was the first time we articulated the source of funds rule, we had previously expressed the concepts connected with it. We reject Larry's contention that *Stava I* marked new law in Nebraska such that the district court abused its discretion by not conducting an evidentiary hearing.

On remand, the district court specifically found that an evidentiary hearing was not necessary and that all the information for the source of funds rule was contained within the record. As shown in our implementation of the source of funds rule below, we agree with the district court and find no abuse of discretion in failing to hold an evidentiary hearing in light of our instructions on remand.

Similarly, the equitable division of the marital estate was a matter of the district court's discretion. In *Stava I*, we remanded the cause for the district court to exercise that discretion in dividing the marital estate after determining the amount of the lots' passive appreciation that was part of the marital estate. We find no abuse of discretion in the court's determination that an equal division of the marital

---

[20] Brief for appellant at 12.

[21] *Id*. at 13.

[22] *Stava I, supra* note 1, 318 Neb. at 47, 13 N.W.3d at 196.

estate was equitable after its implementation of the source of funds rule.

## 2. LEGAL PRINCIPLES

Before addressing the application of the source of funds rule to this case, we first review the legal principles of property division in a dissolution matter generally and the source of funds rule specifically.

### (a) Property Division

Nebraska is a dual classification state, recognizing marital and nonmarital property.[23] "The purpose of a property division is to distribute the marital assets equitably between the parties."[24]

Equitable property division under § 42-365 is a three-step process.[25] The first step is to classify the parties' property as marital or nonmarital.[26] The second step is to value the marital assets and determine the parties' marital liabilities.[27] The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365.[28] The extent to which the property is marital versus nonmarital presents a mixed issue of law and fact.[29] The manner and method of acquisition involve questions of fact, but the classification of the property under those facts is a legal

---

[23] See, *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017); *Meints v. Meints*, 258 Neb. 1017, 608 N.W.2d 564 (2000). See, generally, 1 Brett R. Turner, Equitable Distribution of Property §§ 2:9 and 2:10 (4th ed. 2025).

[24] Neb. Rev. Stat. § 42-365 (Reissue 2016).

[25] *Stava I, supra* note 1.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

question and not a matter of the court's discretion.[30] The second step, valuation, involves questions of fact, and the third step, dividing the marital estate in accordance with the principles of § 42-365, is a matter of discretion.[31]

There is no mathematical formula by which property awards can be precisely determined, but, generally, a spouse should be awarded one-third to two-thirds of the marital estate, the polestar being fairness and reasonableness as determined by the facts of each case.[32]

Any given property can constitute a mixture of marital and nonmarital interests; a portion of an asset can be marital property while another portion can be separate property.[33] The burden of proof rests with the party claiming that the property is nonmarital.[34]

### (b) Source of Funds Rule

The source of funds rule aids the first step of equitable property division by classifying property with mixed marital and nonmarital interests, as well as the related appreciation or depreciation of the property.[35] The rule helps determine the portion of such mixed property that is included in the marital estate and subject to equitable division.[36] Several principles underlie the source of funds rule, which we review here.

The portion of the property's equity created during the marriage with marital funds constitutes marital property, and the appreciation on that equity, whether it be passive or active,

---

[30] *Id.*

[31] *Id.*

[32] See *id.*

[33] *Id.*

[34] *Id.*

[35] See *id.*

[36] See *id.*

is also marital property.[37] "[A]ppreciation in marital equity is not appreciation in nonmarital property to begin with."[38] Active appreciation converts to marital property only the increase in a nonmarital asset's value due to a contribution of marital funds or efforts.[39] This is opposed to passive appreciation, which is appreciation caused by separate contributions and nonmarital forces.[40]

The passive appreciation may have a dual character to the extent that the equity in—or ownership of—the property also has a dual character; the passive appreciation in the separate interest remains separate property while the passive appreciation in the marital interest remains marital property.[41]

"Acquisition" of property can be an ongoing process.[42] It occurs only as it is paid for, as the real value of property is the equity and not the mere legal title—said property has not been acquired to the extent the principal balance of that debt remains unpaid.[43] Instead, it is acquired when, and to the extent that, the parties reduce the principal balance.[44] Thus, the use of marital funds to pay down the mortgage on what was initially separate property acquires the property during the marriage to the extent the principal is paid, creating a proportionate marital interest in that property.[45]

The source of funds rule divides the passive appreciation proportionately between the marital and separate interests if

---

[37] *Id.*

[38] *Id.* at 45, 13 N.W.3d at 195 (quoting 3 Brett R. Turner, Equitable Distribution of Property, § 10:11.10 (4th ed. 2024)).

[39] *Stava I, supra* note 1.

[40] *Id.*

[41] See *id.*

[42] See *id.*

[43] See *id.*

[44] See *id.*

[45] *Id.*

marital funds were used to pay down the principal of a mortgage for property that appreciates during the marriage due to passive market forces.[46]

### 3. Source of Funds Rule Applies

The district court concluded that "the source of funds rule is appropriate to apply in this case." Larry argues that the court erred in doing so. He contends that the application of the source of funds rule to this case undermines the court's equitable division of the marital estate. Larry's argument misconstrues the purpose of the source of funds rule.

[5] The source of funds rule is not concerned with the ultimate division of the marital estate. Indeed, as we set forth in *Stava I*, the source of funds rule is a tool for identifying the marital and nonmarital portions of an asset that has both characteristics. "The purpose of a property division is to distribute the *marital assets* equitably between the parties."[47] It is only after the classification and valuation of the marital estate that the court begins to exercise its discretion to determine the equitable division of the marital estate.[48]

[6,7] The source of funds rule can only be as precise as the evidence presented in each case. To apply the source of funds rule in any given case, at least three variables must be known: (1) the value of an asset, (2) the marital contributions to that asset, and (3) the separate contributions to that asset.[49] When a dissolution action presents an asset with dual character, with both marital and nonmarital interests, and the evidence proves those variables, it is proper to apply the source of funds rule. Because the manner and method of acquisition are questions of fact, in the presence of evidence of conflicting

---

[46] See *id.*

[47] § 42-365 (emphasis supplied).

[48] See *id.*

[49] See *id.*

values for these variables, the issues are those of fact for the trial court to determine.[50]

As we discuss more fully below, this case involved a dual-character asset with evidence of the requisite variables to apply the source of funds rule. We find no error in the district court's conclusion that it was proper to apply the source of funds rule on remand.

## 4. Implementation of Source of Funds Rule

We now turn to the implementation of the source of funds rule to the assets in this case. In *Stava I*, we expressed the rule as follows: $MI = V(MC/TC)$, where "$MI$" is the marital interest in the asset's value, "$V$" is the value of the asset, "$MC$" is the marital contributions toward acquisition of the asset, and "$TC$" is the total contributions toward acquisition of the asset. We note that the same rule can also be expressed in multiple other ways, such as $MI = V \times (MC \div TC)$; $MI = V \times MC \div TC$; $(MC \div TC) \times V = MI$; $MC \div TC \times V = MI$.[51]

[8-10] The source of funds rule calculates the percentage of the total contributions made by the marriage in the acquisition of an asset to determine the proportional marital interest in the appreciation of the asset.[52] As we discussed in *Stava I*, the use of marital funds to acquire assets creates a marital ownership interest in the asset to the extent those marital funds reduce the principal balance of a loan.[53] The ultimate goal of the source of funds rule is to classify dual-character assets and determine the percentage of an asset acquired by the marriage—the marriage's ownership

---

[50] See *id.*

[51] See, generally, 1 Turner, *supra* note 23, § 5:24.

[52] See *Stava I, supra* note 1.

[53] See *id.*

percentage—in order to calculate the marital interest in the appreciated value of the asset.[54]

For example, suppose an asset is valued at $500. The marital contributions toward the acquisition of that asset were $10, and the separate contributions were $40. Adding $10 and $40, the total contributions toward the acquisition of that asset were $50. Then, dividing $10 (the marital contributions) by $50 (the total contributions) yields a marital ownership percentage of 20 percent of the asset. Thus, 20 percent of the asset's $500 value is classified as marital property and part of the marital estate. The marital interest in the asset is $100, which is calculated by multiplying $500 by 20 percent. Accordingly, the marital interest of $100 would need to be divided equitably. Using the formula for the source of funds rule from *Stava I*, these steps are mathematically expressed as $100 = $500($10/$50). The calculation can also be expressed as ($10÷$50)×$500 = $100.

The assets at issue in this case are the land and improvements of Lot 14 and Lot 15. As we set forth below, we separately consider the land and the improvements for each lot.

### (a) Land

[11] The record establishes that Larry acquired the land of both Lot 14 and Lot 15 with his separate funds before the parties' marriage. The fact that the land was later used as collateral for loans to construct improvements on the land is immaterial to the question of the land's acquisition, which the source of funds rule concerns. As one leading treatise on the subject provides:

> Payments on secured debt are contributions to the asset to which the original borrowed funds flowed. They are not contributions to an asset which secures the debt, but which was not otherwise acquired with the debt proceeds.

---

[54] See *id.*

> . . . [T]he court must distinguish in some way between contributions which ultimately [were] used to help acquire the mortgaged property, and contributions which ultimately flowed to some other destination.[55]

As the treatise's language indicates, although an asset's use as collateral puts the asset at risk, the asset is not somehow unacquired to be later reacquired with marital funds. Accordingly, no marital contributions were made for the acquisition of the land, and the land was and remained Larry's separate property.

On appeal, Carine argues that separating the land and the improvements thereupon is improper. She contends that a "holistic approach"[56] should be taken. To the extent Carine maintains that we mandated the land and the improvements be considered together for the purposes of the source of funds rule in *Stava I*, Carine is mistaken.

First, in *Stava I*, the district court and the Court of Appeals only considered the active appreciation rule in their analyses of the marital estate. Our remand was for the district court to consider the implementation of the source of funds rule to the three assets at issue. We did not consider the issue of marital passive appreciation of the disputed properties in *Stava I*.

Second, Carine points to our language in *Stava I* that set forth: "'Since the marital and separate interests attach to the entirety of the asset and not to specific parts, each interest appreciates or depreciates passively in the same percentage as the entire asset.'"[57] Carine contends that the entirety of the asset is the land and the improvements. However, the language she points to speaks to the fact that the marital and

---

[55] 1 Turner, *supra* note 23, § 5:26 at 689.

[56] Brief for appellee at 28.

[57] *Stava I, supra* note 1, 318 Neb. at 45, 13 N.W.3d at 195 (quoting 1 Turner, *supra* note 23, § 5:24 (4th ed. 2024)).

separate interests in an asset are affected equally by passive appreciation or depreciation; it does not define what constitutes an asset. Certainly, in some cases, the separation of land and improvements thereupon would be inappropriate. But that is not the case here, where the land and the improvements were separately acquired and, as the evidence showed, passively appreciated separately from one another.[58]

We applied this same principle in *Seemann v. Seemann*.[59] In that case, one spouse argued that an account containing stock shares became marital property because it was used as collateral to secure marital debt. We rejected that argument. Instead, we concluded that the use of the account to secure debt did not change the marital or nonmarital nature of the property. Treating each share separately, the nonmarital shares and the related passive appreciation remained nonmarital property, regardless of their use as collateral.

Here, because Larry acquired the land of Lot 14 and Lot 15 before the parties' marriage, using separate funds, the passively appreciated value of the land remained his separate property. There were no marital contributions made toward the acquisition of the land that would implicate the source of funds rule. We determine that the district court erred in classifying a portion of the passive appreciation of the land of Lot 14 and Lot 15 as part of the marital estate.

### (b) Improvements

Lot 14 and Lot 15 each have improvements, but only Lot 14's improvements are at issue in this case. The Court of Appeals already determined that the barn on Lot 15 was

---

[58] See 1 Turner, *supra* note 23, § 5:26 at 678, 678-79, 679-80 ("court may classify and value the improvements as a distinct asset," "value of an improvement is the amount it adds to the fair market value," and where "evidence [shows] that an improvement added no value to the property, it is generally . . . not treated as a contribution").

[59] *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

marital property under the active appreciation rule, which we affirmed in *Stava I*.[60] Accordingly, there was

> $116,299 of marital equity in the barn . . . . Carine [was] entitled to one-half ($58,149.50) of that marital equity. Carine [was] therefore entitled to an additional marital equalization of $45,334 ($58,149.50 minus the $12,815.50 credit already given by the district court). Adding $45,334 to the $45,000 equalization judgment previously ordered results in a modification of the equalization judgment to $90,334 owed by Larry to Carine.[61]

Based on our prior affirmance of the Court of Appeals' analysis and conclusion that the barn was entirely marital property under the active appreciation rule, there was no passive appreciation implicating the use of the source of funds rule, and the only asset remaining to be considered under the source of funds rule is the improvements on Lot 14.

The relevant known variables pertaining to Lot 14 and the application of the source of funds rule are as follows: (1) the value of the improvements at the time of marriage of $263,400, (2) the outstanding loan amount at the time of marriage of $190,306, (3) the marital contributions of $84,620 toward the principal loan balance, (4) Larry's separate contribution to pay off the mortgage balance with proceeds from premarital property of $107,126.88, and (5) the appreciated value of the improvements of $348,000.[62]

[12] We must first calculate Larry's total separate contributions to the improvement. His first separate contribution is the equity in the improvement at the time of marriage. The equity in the improvement is the value at the time of marriage, less the outstanding loan amount at that time. We note

---

[60] See, *Stava I, supra* note 1, 318 Neb. at 49-50, 13 N.W.3d at 197 (affirming classification of "joint marital property due to the joint effort under which they were constructed and operated"); *Stava v. Stava, supra* note 2.

[61] *Stava v. Stava, supra* note 2, 32 Neb. App. at 859, 6 N.W.3d at 580.

[62] See *Stava I, supra* note 1.

that Larry's premarital equity must be included as a separate contribution because the goal of the source of funds rule is to classify the passive appreciation of the asset that occurs during the marriage. Larry's other separate contribution is his payoff contribution.

Larry's total separate contributions can be calculated by subtracting \$190,306 (the outstanding loan amount) from \$263,400 (the value of the improvement at the time of marriage), which results in an initial equity contribution of \$73,094. We then add \$73,094 to \$107,126.88 (Larry's later separate contribution to pay off the loan), which results in a total separate contribution of \$180,220.88.

Next, we must calculate the total contributions by adding \$84,620 (the marital contributions) to \$180,220.88 (Larry's total separate contributions), which results in total contributions of \$264,840.88.

We next divide the marital contributions (\$84,620) by the total contributions (\$264,840.88) to calculate the marital ownership interest percentage, then we multiply that figure by the total present value of the asset (\$348,000). This calculation yields the value of the marital interest in the asset. Using the formula for the source of funds rule from *Stava I*, these steps are mathematically expressed as \$111,190.39 = \$348,000(\$84,620/\$264,840.88). The calculation can also be expressed as (\$84,620÷264,840.88)×\$348,000 = \$111,190.39.

Because the district court determined that an equal division of the marital estate was equitable under the facts of this case, we must modify the court's equalization payment to realize its equitable division. To do so, we divide \$111,190.39, the marital interest in the asset, by 2 to calculate Carine's half of the marital interest and arrive at \$55,595.20. Because this amount was not previously accounted for, it must be added to the previously modified equalization payment of \$90,334 that we affirmed in *Stava I*. Accordingly, we modify the decree of dissolution to include a total equalization payment of \$145,929.20 owed by Larry to Carine.

## VI. CONCLUSION

The district court did not abuse its discretion in overruling Larry's motion for an evidentiary hearing. However, it erred in its application of the source of funds rule. Accordingly, we affirm the decree of dissolution as modified in accordance with this opinion.

Affirmed as modified.

Cassel, J., concurring in part, and in part dissenting.

The majority opinion recognizes, at times implicitly, that the mathematical precision embraced by *Stava v. Stava* (*Stava I*)[1] comes with significant qualifications. The source of funds rule, the court says, is "a *tool* for identifying the marital and nonmarital portions of an asset." (Emphasis supplied.) The court concedes that some "variables *must be known*" and that the rule "can only be as precise as the evidence presented." (Emphasis supplied.) It acknowledges a leading treatise on the subject that a trial court "'must *distinguish in some way* between contributions which ultimately [were] used to help acquire the mortgaged property, and contributions which ultimately flowed to some other destination.'" (Emphasis supplied.) And it accepts that *Stava I* did not "define what constitutes an asset." These refinements help.

But problems remain. Conflicting evidence of historic values degrades precision. Reliance upon opinion evidence does likewise. Tax or banking records may introduce more uncertainty. And "'distinguish[ing] in some way'" likely involves tracing assumptions and more imprecision.

In my view, "tension between this rigid, formulaic approach and the purported recognition of trial court discretion"[2] remains. The source of funds rule serves a modest function— where the facts justify its application, it permits a court to treat some portion of a nominally premarital asset, or collection of

---

[1] *Stava v. Stava*, 318 Neb. 32, 13 N.W.3d 184 (2024).

[2] *Stava I, supra* note 1, 318 Neb. at 51, 13 N.W.3d at 198 (Cassel, J., concurring in part, and in part dissenting).

assets, as marital and to accord to that portion appreciation or depreciation accruing after acquisition.

Here, I could agree that the district court's division tipped too far toward Carine. But I have almost no confidence that it did so by exactly $142,072.80. The opinions, estimates, and assumptions underlying the "variables" upon which this court relies simply do not permit this level of precision.

Would this court have modified the judgment if the difference were $50,000, or $25,000, or $10,000, or $1,000, or $100? Nothing here provides an answer. This leaves our trial bench and practicing bar in the same "quandary"[3] as before.

One must ask—is the difference material? Does the valuation of some marital interest in the improvements on Lot 14, resulting from the source of funds rule, make the division of the marital estate inequitable? Perhaps the district court's division did so. But I do not agree that an equitable division compelled this court's calculated amount—no more and no less. To the extent that the majority opinion, expressly or implicitly, requires this level of precision, I respectfully dissent.

-------------------

[3] *Id.*